A-489-501
Remand Redetermination
Slip Op. 21-18
POR 05/01/2017-04/30/2018
**Public Document**
AD/CVDIV: MZ

# FINAL RESULTS OF REDETERMINATION
# PURSUANT TO COURT ORDER

*Borusan Mannesmann Boru Sanayi Ve Ticaret A.Ş. and Borusan Mannesmann Pipe U.S. Inc.
v. United States*, Court No. 20-00015, Slip Op. 21-18
Court of International Trade February 17, 2021

**I.     SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (CIT or Court) in *Borusan*.[1]  This litigation pertains to the 2017-2018 antidumping duty administrative review of the antidumping duty order on circular welded carbon steel standard pipe and tube products from Turkey.[2]  The respondent and plaintiff is Borusan Mannesmann Boru Sanayi Ve Ticaret A.Ş. and Borusan Mannesmann Pipe U.S. Inc. (BMB).

In *Borusan*, the CIT ordered Commerce to "eliminate any adjustment to {cost of production} based on a {PMS } in the sales-below-cost test."[3]  Also, while the CIT in *Borusan* sustained Commerce's decision that the constructed export price (CEP) and export price (EP) may be reduced by section 232 duties paid,[4] the CIT ordered Commerce to reweigh all of the

---

[1] *See Borusan Mannesmann Boru Sanayi Ve Ticaret A.Ş. and Borusan Mannesmann Pipe U.S. Inc., v. United States*, Court No. 20-00015, Slip Op. 21-18 (CIT February 17, 2021) (*Borusan*).
[2] *See Circular Welded Carbon Steel Standard Pipe and Tube Products from Turkey:  Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2017-2018*, 85 FR 3616, 3617 (January 22, 2020) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM); *see also Circular Welded Carbon Steel Standard Pipe and Tube Products from Turkey:  Amended Final Results of Antidumping Duty Administrative Review; 2017-2018*, 85 FR 12893 (March 5, 2020).
[3] *See Borusan* at 19.
[4] *See Borusan* at 17.

evidence, including any relevant sales data, with respect to the reduction of CEP by section 232 duties paid, "applying normal decision-making tools without an adverse inference."[5]

Commerce continues to find that a particular market situation (PMS) existed in Turkey during the period of review (POR) that distorted the price of hot-rolled coil, the principle material input for the production of the subject merchandise and significant component of the cost of production of the subject merchandise. Nevertheless, because the CIT has directed Commerce not to make an adjustment to BMB's cost of production for purposes of the sales-below-cost test, under respectful protest, we have recalculated BMB's weighted-average dumping margin with no PMS adjustment to BMB's cost of production for purposes of the sales-below-cost test.[6]

Moreover, pursuant to the CIT order that Commerce reweigh all of the evidence, including any relevant sales data, with respect to the reduction of CEP by section 232 duties paid, without applying an adverse inference, we have re-examined the information on the record. Based on record evidence, we have determined that section 232 duties should not be deducted from CEP sales for purposes of this remand redetermination, because the CEP shipment on which section 232 duties were paid, shortly before the end of the POR, did not include products that BMB sold between the shipment entry date and the end of the POR.

## II.     DRAFT RESULTS OF REDETERMINATION

Pursuant to the CIT's remand order, Commerce has recalculated the weighted – average dumping margin for BMB without making:  (A) an adjustment to account for the PMS concerning the input costs for hot-rolled steel for purposes of the sales below cost test; and (B) an adjustment to CEP sales for section 232 duties.[7]

---

[5] *Id*. at 17-19.
[6] *See Viraj Group, Ltd. v. United States*, 343 F.3d 1371 (Fed. Cir. 2003).
[7] *See* Memorandum, "Draft Results of Redetermination Pursuant to Remand of Circular Welded Carbon Steel

1. <u>Background</u>

Consistent with section 771(15)(C) of the Tariff Act of 1930 as amended (the Act), Commerce found that a cost-based PMS existed during the POR, which distorted the cost of hot-rolled coil in the production of the merchandise sold in Turkey.[8] Under section 504 of the Trade Preferences Extension Act of 2015, Congress provided that, when Commerce determines that a cost-based PMS exists, Commerce may, in accordance with section 773(e) of the Act, remedy the cost-based PMS through "any other calculation methodology." Here, Commerce found the existence of a PMS in Turkey that resulted in distortions in the Turkish market for the prices of hot-rolled coil based on the cumulative impact of the continued effects of global steel overcapacity, the Government of Turkey's subsidization of hot-rolled coil, and Government of Turkey ownership of the largest producers of hot-rolled coil in Turkey.[9]

Accordingly, Commerce accounted for this distortion by upwardly adjusting BMB's reported cost of hot-rolled coil – an input used to produce circular welded pipe and tube – for purposes of determining the normal value of BMB's sales of circular welded pipe and tube.[10] When determining the normal value of BMB's U.S. sales of circular welded pipe and tube, Commerce relied on home market prices and applied the PMS adjustment to BMB's reported costs for purposes of determining whether sales were made below cost.[11] Commerce quantified the impact of the PMS by the adjustment factor derived from a regression analysis placed on the record by the petitioner.[12]

---

Standard Pipe and Tube Products from Turkey: Borusan Mannesmann Boru Sanayi Ve Ticaret A.Ş. and Borusan Mannesmann Pipe U.S. Inc. Calculation Memorandum," dated March 22, 2021 (BMB's Draft Remand Results Analysis Memorandum).
[8] *See Final Results* IDM at 6-7, 18.
[9] *Id.* at 18.
[10] *Id.* at 23.
[11] *Id.* at 5-7.
[12] *Id.* at 22. The petitioner is Wheatland Tube Company, a domestic producer and interested party under section 771(9)(C) of the Act.

3

2. <u>Remand Order</u>

In *Borusan*, the CIT ordered Commerce to "eliminate any adjustment to {cost of production} based on a PMS in the sales-below-cost test."[13] The CIT held that Commerce is only permitted to adjust its cost of production for a PMS when calculating normal value based upon constructed value under section 773(e) of the Act, as opposed to calculating normal value based upon home market sales and determining whether to disregard sales below the cost of production under section 773(b) of the Act through the sales-below-cost test.[14] Consequently, the CIT concluded that "Commerce's adjustments to {BMB's} {cost of production} on account of a PMS for the purpose of the sales-below-cost test do not give effect to the unambiguously expressed intent of Congress and are therefore contrary to law."[15] Finally, having found Commerce's PMS adjustment not in accordance with the law, the CIT stated that the claims relating to Commerce's PMS adjustment methodology and whether Commerce's PMS determination was supported by substantial evidence were now mooted.[16]

Additionally, the CIT sustained Commerce's determination that CEP and EP may be reduced by section 232 duties paid.[17] The CIT held that Commerce's determination was reasonable because of the "crucial differences between section 201 and section 232 duties," including that section 201 duties are more akin to antidumping duties and that an interplay exists between antidumping duties and section 201 duties, which is not present with section 232 duties.[18] However, the CIT held that Commerce failed to cite substantial evidence that BMB's CEP sales included section 232 duties or explain how it arrived at such a conclusion using neutral facts available, particularly given that there was one shipment on which section 232

---

[13] *Borusan* at 19.
[14] *Id.* at 8-9.
[15] *Id.* at 9.
[16] *Id.*
[17] *Id.* at 17.
[18] *Id.*

4

duties were paid and that shipment entered the United States a few days before the end of the POR and the "average inventory period for these types of goods is the better part of a year."[19] Accordingly, the CIT ordered that Commerce reweigh all of the evidence, including any relevant sales data, with respect to the reduction of CEP sales by section 232 duties paid, applying normal decision-making tools without an adverse inference.[20]

3. <u>Analysis</u>

Pursuant to the CIT's order, Commerce has removed the PMS adjustment to BMB's cost of production for purposes of the sales-below-cost test. Commerce, thus, in accordance with the CIT's directed order, is unable on remand to provide a remedy to address the PMS found in this administrative review, contrary to the statutory intent of Congress. For this reason, we are filing this redetermination with the CIT under respectful protest.

Consistent with section 771(15)(C) of the Act, Commerce found that a cost-based PMS existed during the POR, which distorted the cost of hot-rolled coil used in the production of the merchandise sold in Turkey.[21] Under section 504 of the Trade Preferences Extension Act of 2015, Congress provided that, when Commerce determines that a cost-based PMS exists, Commerce may, in accordance with section 773(e) of the Act, remedy the cost-based PMS through "any other calculation methodology." Although the CIT has held that Commerce may not adjust for purposes of the sales-below-cost test, Commerce observes that if a PMS exists, that PMS by definition results in distorted costs to the producer of the merchandise at issue.

In this case, the distorted costs to the producer were for the purchase of the hot-rolled coil input. Those distorted costs are, therefore, part of the producer's overall cost of production of the circular welded carbon steel pipe and tubes from Turkey, which means that if

---

[19] *Id.* at 18-19.
[20] *Id.* at 19.
[21] *See Final Results* IDM at 43-45.

5

Commerce uses those costs of production in its sales-below-cost test, absent an adjustment, the resulting comparison is between home market sales prices and the distorted costs of producing the merchandise. The results of the test might be that either more or fewer home market sales pass the below-cost test than if the costs were not distorted, but in any case, the outcome will likely differ because of the introduction of distortions into the sales-below-cost test.

Respectfully, we do not believe that such an outcome was intended by Congress when it amended the statute to: (1) allow Commerce to determine if a PMS which distorts the costs of production exists; and then (2) provide a remedy to that PMS. Nonetheless, because the CIT has ordered Commerce to "eliminate any adjustment to {cost of production} based on a {PMS} in the sales-below-cost test,"[22] we have revised our calculations consistent with that directive, but are filing this remand with the CIT under respectful protest.

Additionally, pursuant to the CIT's remand order, we have re-examined record information involving the reduction of CEP sales prices by section 232 duties. In doing so, we find that the products at issue entered the inventory of BMB's affiliated reseller in the United States from a single shipment, on which the affiliate paid section 232 duties at the end of the POR. This shipment did not include any of the products that BMB's U.S. affiliate sold from its inventory after the shipment entry date, based on the product code used to identify the CEP entry that entered after March 23, 2018 (*i.e.*, when section 232 duties went into effect) and before the end of the POR.[23] Thus, record evidence indicates that none of the products that entered the U.S. affiliate's inventory from the aforementioned shipment were sold during the POR.[24] Accordingly, after re-examining record information, and pursuant to the CIT's remand

---

[22] *See Borusan* at 19.
[23] *See* BMB's Letter, "Circular Welded Carbon Steel Pipes and Tubes from Turkey, Case No. A-489-501: Response to 3rd Supplemental Section C Questionnaire," dated May 20, 2019 at 3 and Exhibit C-29.
[24] *Id.*

6

order, we determined that record information does not support the reduction of CEP sales prices by section 232 duties. Therefore, we have also recalculated the weighted – average dumping margin for BMB without making an adjustment to CEP sales prices for section 232 duties.[25]

III. **COMMENTS ON DRAFT RESULTS OF REDETERMINATION**

On March 22, 2021, Commerce issued its draft results of redetermination and provided interested parties an opportunity to comment on the Draft Results.[26] Commerce received comments from BMB[27] and Wheatland Tube Company (Wheatland).[28] These comments are addressed below. After considering BMB's and Wheatland's comments, we have not made any changes to our conclusion in the Draft Results for these final results of redetermination.

*BMB's Comments[29]*

- In its Draft Results of Redetermination Pursuant to Court Remand, Commerce complied with the CIT's instructions by correctly removing the PMS adjustment to BMB's cost of production for purposes of the sales-below-cost test and also determining that section 232 duties should not be deducted from CEP inventory sales after re-examining record evidence.[30]

---

[25] *See* BMB's Draft Remand Results Analysis Memorandum.
[26] *See* "Draft Results of Redetermination Pursuant to Court Order, *Borusan Mannesmann Boru Sanayi Ve Ticaret A.Ş. and Borusan Mannesmann Pipe U.S. Inc. v. United States,* Court No. 20-00015 Slip Op. 21-18 (Court of International Trade February 17, 2021)," dated March 22, 2021 (Draft Results of Redetermination).
[27] *See* BMB's Letter, "Circular Welded Carbon Steel Pipes and Tubes from Turkey, Case No. A-489-501: BMB and BMP's Comments on Draft Remand Redetermination," dated March 29, 2021 (BMB's Comments on Draft Redetermination).
[28] *See* Wheatland's Letter, "Circular Welded Carbon Steel Pipes and Tubes from Turkey: Comments on Draft Remand Results," dated March 29, 2021 (Wheatland's Comments on Draft Redetermination).
[29] *See* BMB's Comments on Draft Redetermination.
[30] *See* BMB's Comments on Draft Redetermination at 2.

- Commerce should apply this remand redetermination with respect to PMS allegations in all subsequent administrative reviews of standard pipe from Turkey that involve the same allegation and the same parties.[31]

*Wheatland's Comments*[32]

- Wheatland respectfully disagrees with the Court that the statute does not permit Commerce to adjust the cost of production to account for a PMS when performing the sales-below-cost test. However, given the Court's order, Commerce was left with no choice but to abandon this adjustment.[33]

- Wheatland agrees with Commerce's decision to exclude the adjustment for a PMS to the cost of production under protest.[34]

- Wheatland further agrees with Commerce's statement that it "continues to find that a PMS existed in Turkey during the period of review that distorted the price of hot-rolled coil, the principal material input for the production of the subject merchandise and significant component of the cost of production of the subject merchandise."[35]

*Commerce's Position:*

Commerce found that a cost-based PMS existed during the POR that distorted the cost of hot-rolled coil in the production of the merchandise in Turkey. Commerce notes that the Court did not address the merits of our affirmative PMS finding. Instead, the Court ordered Commerce not to make an adjustment to BMB's cost of production based on a PMS in the sales-below-cost

---

[31] *Id.*
[32] *See* Wheatland's Comments on Draft Redetermination.
[33] *Id.* at 1-2.
[34] *Id.*
[35] *Id.*

8

test. Accordingly, Commerce obliged and implemented the Court's order to "eliminate any adjustment to {cost of production} based on a {PMS} in the sales-below-cost test."[36]

Without recourse to address the PMS, which existed in Turkey during the POR, we, under respectful protest, have made no adjustments to the calculation of BMB's weighted-average dumping margin from the draft results to account for a PMS, despite clear statutory language permitting Commerce to remedy a cost-based PMS which has distorted the costs of particular inputs used to produce the foreign like product and the subject merchandise. Therefore, under respectful protest, for the final results, Commerce has not made a PMS adjustment to the costs of production for the merchandise under review.[37]

Regarding BMB's request that Commerce apply this remand redetermination with respect to PMS allegations in subsequent reviews, Commerce has consistently explained, and the Federal Circuit has agreed, that each administrative review results in a separate determination based upon the administrative record in that review.[38] Thus, Commerce could reach a different conclusion from one administrative review to the next based upon different facts on the record. Moreover, the Court's decision in this litigation is not yet final and conclusive, and the Federal Circuit has not issued binding judicial precedent regarding Commerce's interpretation of the statute with respect to PMS adjustments for purposes of the sales-below cost test.

---

[36] *See Borusan* at 19.
[37] *See* BMB's Draft Remand Results Analysis Memorandum; *see also* Memorandum, "Final Results of Redetermination Pursuant to Remand of Circular Welded Carbon Steel Standard Pipe and Tube Products from Turkey: Borusan Mannesmann Boru Sanayi Ve Ticaret A.Ş. and Borusan Mannesmann Pipe U.S. Inc. Calculation Memorandum," dated concurrently with the instant final remand results (BMB's Final Remand Results Analysis Memorandum).
[38] *See Qingdao SeaLine Trading Co., Ltd. v. United States,* 766 F.3d 1378, 1387 (Fed. Cir. 2014) ("{E}ach administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record."); *see also Stainless Steel Sheet and Strip in Coils from Taiwan; Final Results and Partial Rescission of Antidumping Duty Administrative Review*, 71 FR 7519 (February 13, 2006), and accompanying IDM ("each administrative review of the order represents a separate administrative proceeding and stands on its own"); and *Fresh Garlic from the People's Republic of China Final Results of Antidumping Administrative Review and Rescission of New Shipper Review*, 67 FR 11283 (March 13, 2002), and accompanying IDM ("what transpired in previous reviews is not binding precedent in later reviews").

## IV. FINAL RESULTS OF REMAND REDETERMINATION

Pursuant to the Court's remand order, for *Borusan,* Commerce recalculated BMB's weighted-average dumping margin without making a cost-based PMS adjustment and without making an adjustment to CEP sales prices for section 232 duties. Accordingly, the revised weight-averaged dumping margin for BMB is listed in the chart below:

| Exporter or Producer | Final Results of Review<br><br>Weighted-Average Dumping Margin[39] | Final Results of Remand Redetermination<br><br>Weighted-Average Dumping Margin[40] |
|---|---|---|
| Borusan Mannesmann Boru Sanayi Ve Ticaret A.Ş./Borusan Mannesmann Pipe U.S. Inc. | 8.48 | 4.06 |

4/18/2021

X _____

Signed by: CHRISTIAN MARSH

_____
Christian Marsh
Acting Assistant Secretary
 for Enforcement and Compliance

---

[39] *See* Memorandum, "Analysis for the Amended Final Results of the Antidumping Duty Administrative Review of Welded Carbon Steel Standard Pipe and Tube Products from Turkey: Borusan Istikbal Ticaret T.A.S. and Borusan Mannesmann Boru Sanayi ve Ticaret A.S.," dated February 28, 2020.
[40] *See* BMB's Final Remand Results Analysis Memorandum.